UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Mary Agrella Fitzpatrick,<br><br>  Plaintiff<br><br>v.<br><br>Lens.com,<br><br>  Defendant | Case No.: 2:24-cv-02203-JAD-EJY<br><br>**Order Granting in Part Defendant's Motion to Dismiss with Leave to Amend by January 21, 2025**<br><br>[ECF No. 6] |

This lawsuit challenges allegedly hidden fees added to purchases on the Lens.com website. Plaintiff Mary Agrella Fitzpatrick's purchase from the Lens.com website was subject to one of those fees and she filed this putative class action on behalf of herself and other similarly situated Lens.com consumers in Illinois under the Illinois Consumer Fraud and Deceptive Trade Practices Act.[1] On Lens.com's motion, the United States District Court for the Northern District of Illinois transferred the case to Nevada, where Lens.com now moves to dismiss it under Federal Rule of Civil Procedure 12(b)(6), arguing that Fitzpatrick's Illinois state-law claim is barred by the choice-of-law clause in the Lens.com website's terms of use.[2] In the alternative, it maintains that she hasn't pled sufficient facts to support a plausible claim.[3] And as a final fallback, Lens.com argues that Fitzpatrick isn't entitled to injunctive relief because her complaint doesn't allege that she intends to purchase contact lenses from Lens.com in the future.[4]

Because Fitzpatrick has alleged sufficient facts to support her deceptive-practices claim and Lens.com has not shown that it is precluded under the applicable choice-of-law rules, I deny

---

[1] ECF No. 1-1.
[2] ECF No. 6-1 at 5.
[3] *Id.* at 5–6.
[4] *Id.* at 6.

the motion to dismiss that claim. But I strike her prayer for injunctive relief because Fitzpatrick has not established that she personally has standing to request that remedy, and I give her until January 21, 2025, to file an amended complaint if she can allege true facts to remedy that deficiency.

## Background[5]

Fitzpatrick purchased contact lenses and solution from the Lens.com website on September 19, 2022.[6] The receipt issued by Lens.com showed a total "after rebate" price of $310.07, but Fitzpatrick's credit card was debited $416.04 for the purchase.[7] When she clicked a link in that receipt for "complete order details," she was brought to a page that displayed an accurate total charge but showed a subtotal that was $102.96 higher than the actual cost of her purchases.[8] That $102.96 is the allegedly hidden fee at issue in this case.

Fitzpatrick sues Lens.com under the Illinois Consumer Fraud and Deceptive Trade Practices Act (ICFA), alleging that Lens.com violates that statute by "advertising artificially low prices" to draw in customers and then surreptitiously adds a fee to inflate the total purchase price.[9] Fitzpatrick theorizes that a customer could easily overlook this extra fee because it appears several steps into the check-out process and is placed beneath a conspicuous "Continue" button on the shipping information page.[10] She further alleges that its label ("Taxes & fees") is

---

[5] This is merely a summary of facts alleged in Fitzpatrick's complaint, ECF No. 1-1, and should not be construed as findings of fact.
[6] ECF No. 1-1 at 9, ¶ 29.
[7] *Id.* at 9, ¶ 30.
[8] *Id.* at 11, ¶¶ 31–32.
[9] *Id.* at 17, ¶ 52.
[10] *Id.* at 7–8, ¶¶ 22–23.

misleading because the extra charge is entirely a "processing fee" that "far outweigh[s] the actual costs of processing the order."[11]

Fitzpatrick alleges that she and her putative class members suffered actual damages because they were induced to make "purchases they would not have otherwise made" by Lens.com's misleading advertised prices.[12] She seeks restitution of processing fees; actual, statutory, treble, and punitive damages; interest; attorney's fees and costs; and an order "enjoining [Lens.com] from engaging in the unlawful and unfair acts and practices."[13] Fitzpatrick's case was originally filed in Illinois state court but was then removed to the U.S. District Court for the Northern District of Illinois and eventually transferred here under 28 U.S.C. § 1404(a).[14] Lens.com now moves to dismiss it under Federal Rule of Civil Procedure (FRCP) 12(b)(6).[15]

**Discussion**

**A.    Lens.com's arguments on the choice-of-law clause fail because they rely on inapplicable choice-of-law rules.**

Lens.com argues that Fitzpatrick fails to state a plausible claim under Rule 12(b)(6) because her claim, which is based in Illinois state law, is precluded by the choice-of-law clause in the Lens.com website's terms of use.[16] It makes this enforceability argument using the laws

---

[11] *Id.* at 18, ¶ 53.
[12] *Id.* at 18, ¶ 54.
[13] *Id.* at 18.
[14] ECF No. 1; ECF No. 20.
[15] ECF No. 6-1.
[16] *Id.* at 11.

3

of Illinois.[17] Fitzpatrick's response does not substantively address the enforceability and scope of the choice-of-law clause.[18] Instead she argues that incorporating the terms of use by reference is improper and, in the alternative, that the terms were not displayed conspicuously enough to create a binding contract.[19]

Lens.com's choice-of-law argument fails because it is grounded in the law of the wrong state. As Lens.com notes, a federal trial court sitting in diversity typically evaluates the enforceability of choice-of-law clauses under the choice-of-law rules of the state in which it sits.[20] Though the United States Supreme Court has held that the state law applicable in the original court should apply after a § 1404(a) transfer, it has explicitly ruled that this exception does not apply to transfers resulting from the enforcement of a valid forum-selection clause.[21] "[W]hen a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules."[22]

This is just such a case. U.S. District Judge Manish Shah transferred Fitzpatrick's suit to the District of Nevada because he found that the forum-selection clause in the Lens.com terms of

---

[17] *Id.* at 11–12.

[18] *See* ECF No. 8.

[19] *Id.* at 8–9.

[20] ECF No. 6-1 at 11–12; *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 64 (2013); *Reddy v. Mediscribes, Inc.*, 2020 WL 2220202, at *3 (C.D. Cal. Feb. 18, 2020).

[21] *Atl. Marine Constr. Co., Inc.*, 571 U.S. at 64–65 ("[W]hen a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules.").

[22] *Id.*

use is valid and binding on Fitzpatrick.[23]  I'm not inclined to disagree with him.  So even if I incorporated the terms of use by reference and reached the question of whether the choice-of-law clause precludes Fitzpatrick's ICFA claim, Lens.com's failure to evaluate the clause under Nevada's choice-of-law rules means that this movant has not satisfied its burden.  So I deny without prejudice the motion to dismiss to the extent it's based on the choice-of-law clause.

**B.     Fitzpatrick has alleged sufficient facts to state a plausible deceptive-practices claim under the ICFA.**

Lens.com argues that Fitzpatrick's suit must be dismissed even if it isn't barred by the choice-of-law clause because her complaint lacks sufficient facts to support a plausible ICFA claim.[24]  It insists Fitzpatrick hasn't established "deception" under the ICFA because a reasonable consumer would notice that the cost of a purchase was greater than the advertised price.[25]  Lens.com adds that the claim must fail because Fitzpatrick hasn't pled actual pecuniary damages, she received the value of what she was promised, and she hasn't shown that Lens.com's pricing scheme is "unfair" within the meaning of the ICFA.[26]

Federal pleading standards require a complaint to include enough factual detail to "state a claim to relief that is plausible on its face."[27]  The plaintiff must make direct or inferential factual allegations about "all the material elements necessary to sustain recovery under *some* viable legal theory," and a complaint that fails to meet this standard must be dismissed.[28]  When evaluating a

---

[23] ECF No. 20.
[24] ECF No. 6-1 at 14.
[25] *Id.* at 15.
[26] *Id.* at 16–18.
[27] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).
[28] *Id.*

5

Rule 12(b)(6) motion to dismiss like this one, the court must accept as true all well-pled allegations in the complaint, recognizing that legal conclusions are not entitled to the assumption of truth.[29]

An ICFA claim premised on allegations of deceptive conduct must also meet the heightened particularity standard of FRCP 9(b).[30] That rule requires that a party "alleging fraud [] must state with particularity the circumstances constituting fraud."[31] This particularity requirement ensures that fraud claims are "specific enough to give defendants notice of the particular misconduct [that] is alleged to constitute the fraud."[32]

### 1.   *Reasonable-consumer standard*

Lens.com argues that its added fees are not "deceptive" within the meaning of the ICFA because a reasonable consumer would notice that the final cost of her purchase was higher than the advertised price.[33] Fitzpatrick counters that a reasonable consumer could easily be misled by Lens.com's pricing because the added fee is only revealed to customers at the fifth step of an online purchase, and even then it is "inconspicuously tucked away" below the "Continue" button.[34] She stresses that the "full receipt" revealing that the added "Taxes & fees" is entirely comprised of a "processing fee" is only available upon request.[35]

---

[29] *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).
[30] *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 738 (7th Cir. 2019).
[31] Fed. R. Civ. P. 9(b).
[32] *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).
[33] ECF No. 6-1 at 15–16.
[34] ECF No. 8 at 11.
[35] *Id.* at 12.

To determine whether a practice is deceptive under the ICFA, courts apply a reasonable-consumer standard.[36] The Ninth and Seventh Circuits agree that the reasonable-consumer standard requires "a probability that a significant portion of the general consuming public . . . acting reasonably in the circumstances, could be misled."[37] When applying this standard, "the allegedly deceptive act must be looked upon in light of the totality of the information made available to the plaintiff" and "the context in which that information is provided and used."[38] Advertisements must be evaluated "from the vantage of a reasonable consumer,"[39] and the "touchstone" of the test is whether the advertisement at issue has a "meaningful capacity to deceive customers."[40] "Although ICFA claims often involve disputed questions of fact not suitable to a motion to dismiss, a court may dismiss the complaint if the challenged statement was not misleading as a matter of law."[41]

While courts have applied the reasonable-consumer standard to ICFA claims regarding the labels of food and pharmacy products,[42] this court is not aware of any ICFA case involving

---

[36] *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019); *Rudy v. Fam. Dollar Stores, Inc.*, 583 F. Supp. 3d 1149, 1158 (N.D. Ill. 2022).

[37] *Bell v. Publix Super Mkts., Inc.*, 982 F.3d 468, 477 (7th Cir. 2020) (citation omitted) (quoting *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016)); *McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1097 (9th Cir. 2023).

[38] *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 884 (7th Cir. 2005), *Bell*, 982 F.3d at 477.

[39] *Williams*, 552 F.3d at 938 (quoting *Lavie v. Procter & Gamble Co.*, 129 Cal. Rptr. 2d 486, 494 (Cal. App. 2003)).

[40] *McGinity*, 69 F.4th at 1097.

[41] *Ibarrola v. Kind, LLC*, 83 F. Supp. 3d 751, 756 (N.D. Ill. 2015) (citing *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 940 (7th Cir. 2001)).

[42] *See, e.g., Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969 (7th Cir. 2020) (affirming that the label "100% Pure Aloe Vera Gel" was not deceptive under the ICFA and other state consumer-protection statutes); *see also Kinman v. Kroger Co.*, 604 F. Supp. 3d 720 (N.D. Ill. 2022) (denying a motion to dismiss an ICFA claim because interpreting "SMOKED GOUDA" as meaning that the cheese was smoked over hardwood was "not unreasonable as a matter of law").

allegedly deceptive advertised prices. But the Eastern District of California's decision in *Watson v. Crumbl LLC*, involving California's analogous Consumers Legal Remedies Act (CLRA) and Unfair Competition Law (UCL), is persuasive and helps illustrate the proper application of the reasonable-consumer standard to Fitzpatrick's claim.[43] The *Watson* plaintiffs sued gourmet-cookie retailer Crumbl for adding a service fee to purchases, alleging violations of the CLRA and UCL, among other claims.[44] Crumbl app users could only discover the service fee by clicking on a "?" icon next to the "Taxes & Fees" line on the payment screen.[45] The district court held that the fee had not been clearly disclosed and that a reasonable consumer could be misled by the "Taxes & Fees" line item.[46] It also noted that courts rarely dispose of claims based on the reasonable-consumer test at the motion-to-dismiss stage.[47]

      Like Watson, Fitzpatrick has pled sufficient facts to satisfy the reasonable-consumer test at this early phase of litigation. She has alleged that Lens.com displays the added fee in a less-than-prominent manner during the checkout process and, like Crumbl, mislabels it as "Taxes & fees."[48] She also states that she received one receipt showing a total cost of $310.07, another showing $416.04 with no line-item charge indicating a processing fee, and a third, available only

---

[43] *Watson v. Crumbl LLC*, 2024 WL 3010880 (E.D. Cal. June 10, 2024). As the Seventh Circuit articulated in *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468 (7th Cir. 2020), a group of state-level consumer-fraud statutes known collectively as the "Little-FTC Acts," are "interpreted for the most part interchangeably" and share a "general prohibition against advertising that is likely to deceive a substantial proportion of reasonable consumers." The ICFA is part of this group, as are the CLRA and the UCL. So *Watson*, which addresses the CLRA and UCL, is analogous to the instant case.

[44] *Id.* at *2.

[45] *Id.* at *1.

[46] *Id.* at *6–7.

[47] *Id.* at *6.

[48] ECF No. 1-1 at 7–8, ¶ 23.

upon request, revealing the $102.96 processing fee.[49] Fitzpatrick has thus sufficiently pled facts showing that a reasonable consumer could be misled by the "Taxes & fees" line item during the check-out process, or by the inconsistent price totals and fee breakdowns across different receipts concerning the same Lens.com purchase. So I deny Lens.com's motion to dismiss based on the reasonable-consumer standard.

## 2. *Actual damages*

A private party suing under the ICFA must allege actual damages, which requires that she suffered "actual pecuniary loss."[50] Lens.com argues that Fitzpatrick fails to establish this element because she hasn't alleged that the value of the contact lenses that she ordered from the Lens.com website is less than what she paid.[51] Fitzpatrick responds that she has established actual damages by alleging that she made a purchase and paid a fee when she would not otherwise have done so.[52]

On this point, the reasoning in *Acosta v. Hopper (USA), Inc.* is persuasive.[53] There, a customer sued the travel-service company Hopper under the ICFA and other statutes after discovering that the "Price Freeze" she had purchased for a flight would only cover up to $100.00 per traveler.[54] Customers could discover this price-freeze cap by clicking a circled "i-link" for more information before finalizing their purchase, but they were not required to click

---

[49] *Id.* at 9–12, ¶¶ 30–35.
[50] *Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010) (citation omitted).
[51] ECF No. 6-1 at 12.
[52] ECF No. 8 at 14.
[53] *Acosta v. Hopper (USA), Inc.*, 2023 WL 3072358 (N.D. Ill. Apr. 25, 2023).
[54] *Id.* at *1.

9

that link before completing the check-out process.[55] The *Acosta* court found that it could not "assume at [the motion-to-dismiss] stage that [the plaintiff] and reasonable consumers would click on a 'more information' link where the website or mobile application does not require it for purchase."[56] So the court denied Hopper's motion to dismiss the plaintiff's ICFA claim for failure to state actual damages, stressing the plaintiff's allegation that "she would not have paid as much absent [Hopper's] false and misleading statements and omissions."[57]

Just as Hopper customers could have clicked on an i-link to learn about the $100.00 cap before purchasing a Price Freeze, Lens.com customers could scroll to view the "Taxes & fees" line beneath the "Continue" button on the shipping information page.[58] And like Hopper customers, they are not required—or even likely—to do that before completing their purchases. And while Lens.com also provides an "i-link" that customers can click on before they complete their purchases,[59] that "i-link" is even less useful than Hopper's because it does not reveal that the added charge is entirely a processing fee.[60] Finally, Fitzpatrick alleges that she and her putative class members "purchased lenses they would not otherwise have bought or paid fees they would not otherwise have paid had they not been drawn in by [Lens.com's] deceptively low prices for lenses."[61] So like the *Acosta* plaintiff, Fitzpatrick has pled sufficient actual damages to survive a motion to dismiss at this early stage of litigation.

---

[55] *Id.*

[56] *Id.* at *3.

[57] *Id.* at *4.

[58] ECF No. 1-1 at 7, ¶ 22.

[59] *Id.* at 8, ¶ 24.

[60] *Acosta*, 2023 WL 3072358, at *1, ECF No. 1-1 at 8.

[61] ECF No. 1-1 at 2, ¶ 4.

### 3. Promised value

Lens.com's argument that Fitzpatrick's claim should be dismissed because she received the value that she was promised is equally unpersuasive. The two cases that Lens.com relies on to support its argument —*Mulligan v. QVC, Inc.* and *Kim v. Carter's Inc.* — are not sufficiently analogous. The *Mulligan* and *Kim* plaintiffs were falsely led to believe that the items they purchased had been marked down from a higher price, but they ultimately understood what amount they were paying for the items.[62] As the *Kim* panel noted, those customers offered to purchase products "at the advertised price," and the retailer accepted by taking their money.[63]

Fitzpatrick isn't claiming that she was misled to believe that the price she was paying was a deal; she claims that she was misled to believe she was paying the advertised price when in fact she got charged much more.[64] Rather than incorrectly believing that the price they are paying is the result of a discount like the *Mulligan* and *Kim* plaintiffs, Lens.com customers are surreptitiously charged additional fees without knowing that the total price has increased by 30–50% during the check-out process.[65] So *Mulligan* and *Kim* are inapposite and fail to support dismissal at this stage.

---

[62] *Mulligan v. QVC, Inc.*, 888 N.E.2d 1190 (Ill. App. 2d 2008) (plaintiff sued QVC under the ICFA for inflating the "retail value" assigned to its products to create the illusion that prices were significantly discounted); *Kim*, 598 F.3d 362 (plaintiffs sued a children's clothing retailer for putting a "suggested price" on price tags to create the false impression that the clothes were on sale).

[63] *Id.* at 364.

[64] ECF No. 1-1 at 1–2, ¶ 2.

[65] *Id.* at 4, ¶ 12; 6, ¶ 17.

11

### 4. *Unfair practices*

Lens.com next argues that Fitzpatrick's suit fails "[t]o the extent [it] stems from an alleged 'unfair' practice."[66] Fitzpatrick brings a single claim, which broadly alleges "[v]iolations" of the ICFA.[67] Her statement of that claim focuses on the deceptive nature of Lens.com's online check-out process,[68] and although Fitzpatrick declares that she was "misled and unfairly induced to pay hidden fees," she doesn't specifically articulate whether she's also alleging unfair practices.[69]

To prevail on an ICFA claim, "a plaintiff must plead and prove that the defendant committed a deceptive *or* unfair act,"[70] so an ICFA claim can be premised on deceptive practices, unfair practices, or both.[71] Because Fitzpatrick's ICFA claim can be based solely on allegations of deceptive practices—and as I have held *supra*, she has stated a plausible ICFA claim based on alleged deceptive practices—the request to dismiss any portion of this claim for failure to identify an unfair practice is denied.

**C.     Fitzpatrick hasn't shown that she is at risk of future injury, so she hasn't established Article III standing to seek injunctive relief.**

In its final argument, Lens.com contends that Fitzpatrick's request for injunctive relief should be dismissed.[72] It asserts that she hasn't alleged a realistic threat of future injury because

---

[66] ECF No. 6-1 at 17.
[67] ECF No. 1-1 at 16.
[68] *See id.* at 16–18.
[69] *See id.*
[70] *Vanzant*, 934 F.3d at 736 (emphasis added).
[71] *Id.* at 738.
[72] ECF No. 6-1 at 14.

she now understands that fees are added to purchases on the Lens.com website.[73] Fitzpatrick counters that putative class members should not be deprived of an injunctive remedy because she's now keen to the processing fee.[74]

But Fitzpatrick's inability to obtain injunctive relief dooms the ability of the putative class members to do so, too, because "[u]nless the named plaintiffs are themselves entitled to seek injunctive relief, they may not represent a class seeking that relief."[75] A plaintiff must separately establish standing for each form of relief that she seeks,[76] and "[t]o seek injunctive relief, a plaintiff must show that [s]he is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury."[77] Named plaintiffs must show "that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent."[78] And past harm alone is insufficient to satisfy Article III standing requirements for injunctive relief, though it can be evidence of a threat of future injury.[79]

---

[73] *Id.*

[74] ECF No. 8 at 15.

[75] *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999) (en banc).

[76] *Friends of the Earth, Inc. v. Laidlaw Env't Serv. (TOC), Inc.*, 528 U.S. 167, 185 (2000).

[77] *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).

[78] *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 66 n.20 (1976) (quoting *Warth v. Seldin*, 422 U.S. 490, 502 (1975)).

[79] *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974).

The Ninth Circuit's decision in *Davidson v. Kimberly-Clark Corp.* illustrates when a consumer-fraud plaintiff may have standing to seek injunctive relief.[80] In that case, a consumer bought wipes labeled as flushable but later learned that they were not actually suitable for flushing down toilets.[81] The *Davidson* court held that "a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase."[82] Even though the consumer had not purchased the wipes again,[83] the Ninth Circuit reasoned that her "inability to rely on the validity of the information advertised" by the defendant satisfied the injury requirement of Article III standing.[84]

As the named plaintiff, Fitzpatrick must establish that she personally has standing to seek injunctive relief. Past injury alone cannot establish that standing and, unlike the *Davidson* consumer, Fitzpatrick hasn't plausibly alleged that she is at risk of future harm. She doesn't allege that she cannot rely on the validity of Lens.com's advertisements in the future, and possible future harm to her theoretical class members isn't enough to establish standing. Fitzpatrick's past harm is insufficient to establish Article III standing to seek injunctive relief, so I strike her request for injunctive relief.

---

[80] *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018).
[81] *Id.* at 962.
[82] *Id.* at 969.
[83] *Id.*
[84] *Id.* at 971.

14

**D.     The court grants Fitzpatrick leave to amend her complaint for the limited purpose of establishing standing for injunctive relief.**

While Fitzpatrick has not yet pled facts showing the future harm needed to seek injunctive relief, I grant her leave to amend if she can do so. Such facts might include the knowledge that she can't "rely on the product's advertising or labeling in the future,"[85] though the Ninth Circuit has stated that *Davidson* provides "non-exclusive examples" of plausible threatened future harm.[86] FRCP 15(a) advises that "leave [to amend] shall be freely given when justice so requires."[87] Absent "apparent or declared" futility, a factually supported showing of prejudice, or a heavy influence of the other factors, there is a strong presumption in favor of permitting amendment.[88] I do not find those circumstances here, so I grant Fitzpatrick leave to amend her complaint for the limited purpose of pleading facts to support her request for injunctive relief.

## Conclusion

IT IS THEREFORE ORDERED that defendant Lens.com's motion to dismiss **[ECF No. 6] is GRANTED IN PART**: Fitzpatrick's request for injunctive relief is struck with leave to amend, and the motion to dismiss is otherwise denied. **Fitzpatrick has until January 21, 2025, to file an amended complaint.** If she fails to do so, this case will proceed without a prayer for injunctive relief.

_____
U.S. District Judge Jennifer A. Dorsey
Dated: December 31, 2024

---

[85] *Id.* at 970.

[86] *In re Coca-Cola Prod. Mktg. and Sales Prac. Litig.*, 2021 WL 3878654 at *1 (9th Cir. Aug. 31, 2021).

[87] Fed. R. Civ. P. 15(a).

[88] *Foman v. Davis*, 371 U.S. 178, 182 (1962).